UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ARNOLD RAPHAEL,                                              Case No.

                           Plaintiff,                    **COMPLAINT**

      -against-

                                                      **Jury Trial Demanded**

OPTIONS FOR COMMUNITY LIVING, INC.,

                           Defendant.
-------------------------------------------------------------X

Plaintiff Arnold Raphael ("Raphael" or "Plaintiff") alleges against Defendant Options for Community Living, Inc. ("Options" or "Defendant"), upon information and belief, as follows:

## NATURE OF THE CLAIMS

1. Raphael complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL"), seeking to recover damages he sustained as the result of being subjected to unlawful employment discriminatory practices on the basis of his sex and age.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII and ADEA pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States. This Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

3. Plaintiff duly filed a Charge of Discrimination (No. 520-2021-01799) with the United States Equal Employment Opportunity Commission ("EEOC") on or about February 12, 2021.

4. The EEOC sent a Notice of Right to Sue to Plaintiff on March 31, 2021 (annexed hereto as Exhibit A).

5. Any and all other prerequisites to the filing of this suit have been met.

**PARTIES**

6. Plaintiff is a 55-year old man who is protected from unlawful employment discriminatory practices under Title VII, ADEA and NYSHRL.

7. Plaintiff resides in Nassau County in the State of New York.

8. Options is a domestic not-for-profit corporation duly organized and existing under and by virtues of the laws of the State of New York.

9. Options is a domestic not-for-profit corporation authorized to conduct business in the State of New York.

10. Options provides housing, support services, care coordination for people recovering from mental illness and those living with HIV/AIDS or other chronic health conditions.

11. Options receives funding from AIDS Institute, the Ryan White HIV/AIDS Program, Nassau County, sponsors, donors, *etc.*

12. Options' administrative office is located at 25 Howard Place, Ronkonkoma, New York 11779 ("administrative office").

14. Options' Suffolk County Satellite is located at 600 Albany Avenue, Suite 16, Amityville, New York 11701 ("Amityville").

## FACTUAL ALLEGATIONS

15. On July 11, 2016, Plaintiff commenced his employment at Options.

16. During the entirety of his employment at Options, Plaintiff worked at Amityville.

17. At Options, Plaintiff was employed as a Health Educator.

18. Plaintiff worked at a Health Education department of Options.

19. In that role, Plaintiff conducted initial and ongoing assessments of assigned clients with HIV, AIDS, STD, *etc.*, performed home visits according to clients' needs, educated clients and family on health and human service resources, conducted client outreach and engaged and engagement while in the field.

20. Plaintiff provided health education to Options' client in four different languages: English, French, Haitian Creole and Spanish.

21. During his employment at Options, Plaintiff earned $46,600 annually.

22. During his employment at Options, Plaintiff was entitled to various benefits *e.g.* medical, dental and vision insurance; tuition assistance; life insurance; supplemental specific illness/ hospitalization coverage, *etc.*

23. At the time of Plaintiff's termination, he was only a few months short from fully vesting in his 403(b) retirement plan which was matched by Options.

24. At the commencement of his employment with Options, during employee orientation, Plaintiff was informed that if an employee is not fully vested in the 403(b) plan and leaves the

job in five years or less, such employee will lose all pension benefits, but if the employee leaves after five years, he/she will receive 100% of the promised benefits.

25. At Amityville, Plaintiff reported to Lauren Cable, and then to Christie Rode, his direct supervisor.

25. Plaintiff also reported to Erin Basham, the program manager, and Allison Covino, the program director, and Yolanda Robano-Gross, the CEO.

26. In or around February 2020, Erin Basham, the program manager, started working at Amityville office more often and interacted with Plaintiff on a more frequent basis.

27. During his employment with Options, Plaintiff was a stellar employee.

28. During his employment with Options, Plaintiff satisfactory performed his duties and responsibilities.

29. On a regular basis, in addition to his regular employment, Plaintiff volunteered at Options to support and promote the organization by handing out flyers, attending wellness events, setting up tables, going to various churches.

30. As the result of Plaintiff's outstanding work performance, the group education attendance increased up to 25 clients per group visit, whereas there were only 5-7 clients to attend the group education/peer group in Nassau and Suffolk counties at the time of Plaintiff's hire.

31. Options' clients always provided a positive feedback regarding Plaintiff's work performance in response to an inquiry by Options' Quality Assurance personnel.

32. During staff meetings other Options' employees often clapped in recognition of Plaintiff's outstanding work performance.

33. On a regular basis, Yolanda Roban-Gross, the CEO, praised Plaintiff's outstanding work performance indicating that Raphael did "a good job".

34. Despite his outstanding work performance, Plaintiff became the target of unlawful employment discriminatory practices by Options, through its agents and employees, because of his sex and age.

35. Plaintiff was the only man amongst numerous women at Amityville, including but not limited to the following: Christine (woman), Andrea (woman), Suzane (woman), Sofia (woman), Carla (woman), Tracy (woman), Juliana (woman), Jessica (woman).

36. Plaintiff was older than most of the women at Amityville, including but not limited to the following: Christine (in her 30s), Andrea (in her 30s), Juliana (in her 30s) and Jessica (in her 30s).

37. Options' executive team is consistent solely from women.

38. During his employment at Options, Plaintiff was treated less well, than similarly situated to him female employees.

39. Plaintiff was treated less favorably in his terms, conditions and privileges of employment because of his sex and age.

40. By way of example, Plaintiff was reprimanded for missing notes at AIDS Institute Records System ("AIRS"), while female employees were not reprimanded for the same.

41. In that regard, in or around February 2020, during a staff meeting with Christie Rode, the supervisor, and Jessica Brugueras, a co-worker, Plaintiff informed Christie Rode that some of the notes that he had entered to AIRS were missing. Jessica Brugueras expressed that some of her notes were also missing from AIRS. Christie Rode promised to look into this matter.

42. On February 24, 2020, Plaintiff was summoned to the administrative office into a meeting with Lori Barraud (HR Director), Kimberly Cirne (Compliance and Quality), Susan Steinhardt (Compliance and Quality Director).

42. During said meeting, Plaintiff was reprimanded for the notes he had entered into AIRS which were missing. Plaintiff explained that he had previously reported the issue of missing notes to Christie Rode, his immediate supervisor, and that Jessica Brugueras' notes were missing as well. When Lori Barraud inquired from Plaintiff why he did not report the issue to the administrative office, Plaintiff responded that he did not want to be insubordinate, and reported the issue within the chain of command to his immediate supervisor, as required by the employee handbook.

43. When Plaintiff inquired from Jessica Brugueras whether she was also summoned into a meeting at the administrative office, he was informed that she was not.

44. Upon information and belief, although other Options' female employees (*e.g.* Susan (woman), Sophia (woman), Carla (woman), Tracy (woman), Juliana (woman)) were missing notes as well, only Plaintiff was reprimanded and summoned to a meeting at the administrative office of Options.

45. During said meeting, Plaintiff complained that he felt like he was targeted, because, according to his female coworkers, none of them was summoned into a similar meeting at the administrative office of Options.

6

47. Plaintiff complained about discrimination to no avail.

46. From March 19, 2020 until June 2020, due to Covid-19, Plaintiff worked from home and a few days from the office.

47. On July 2, 2020, Plaintiff was summoned into another meeting with Lori Barraud (HR Director), Kimberly Cirne (Compliance and Quality), and Susan Steinhardt (Compliance and Quality Director) at Options' administrative office.

48. In retaliation and further discrimination against Plaintiff, Options, through its agents and employees, falsely accused Plaintiff in fraudulent activity with regard to his mileage usage.

49. Instead of conducting an investigation (which would reveal that instead of indicating Amityville-Glen Cove-Hempstead-Amityville Plaintiff indicated Amityville-Hempstead-Glen Cove-Amityville, which was clearly an honest mistake as destinations were wrongfully placed in a reverse order), Options looked for a pre-textual reason to force him out of the organization.

52. Plaintiff requested if he could have a copy of the notes Kimberly Cirne was taking during the meeting, but she refused to provide the same. Only after Plaintiff persistently insisted, Kimberly Cirne reluctantly agreed to share her notes. Plaintiff noticed that there were numerous discrepancies between the information Plaintiff had provided during the meeting, and the notes Kimberly Cirne was taking down. Upon his request, Kimberly Cirne reluctantly made changes.

53. On August 6, 2020, Plaintiff was summoned into another meeting with Lori Barraud (HR Director) and Erin Basham, the program manager.

54. During this meeting, Lori Barraud and Erin Basham acknowledged that Options found no fraudulent activity by Plaintiff, but that there were still notes which were missing from AIRS. When Plaintiff inquired from Lori Barraud and Erin Basham what notes were missing specifically, they had no answer.

50. In further retaliation and discrimination against Plaintiff, Erin Basham instructed Plaintiff to complete his daily notes and log the same from the office each day; Plaintiff was told to submit a copy of his notes to his supervisor by noon on Monday.

51. Consequently, Plaintiff was required to come to the office five days per week in the midst of pandemic, while female employees were not required to do the same.

52. On a regular basis, Plaintiff was the only male employee in the office, while Options' female employees were allowed to work from home.

53. Said policy and practice resulted in a disparate impact to the detriment of the protected group of individuals which Plaintiff belonged to on the basis of his sex.

54. During the meeting on August 6, 2020, Plaintiff complained that he felt like he was being singled out, because other (female) employees were missing 2-3 months worth of notes, but he was the only one (male) who was summoned to a meeting with HR. Plaintiff further complained that he felt like his rights under Title VII were violated.

55. Plaintiff's complaints about discrimination continued to be ignored, and Options took no remedial action to address the situation.

56. On August 15, 2020, Plaintiff was called into another meeting, during which Erin Basham and Vicky Perks were present. During said meeting, Plaintiff reiterated that he did not want to be singled out and that other (female) health educators, health managers had

8

barely any notes in AERS, and that "some people (referring to female employees) ha[d] no others to look over them to see how many mistakes they [were] making, but when it c[ame] to Arnold there [were] 15-20 people overlooking Arnold's work".

62. In retaliation and further discrimination against Plaintiff, Options, through its agents and employees, subjected Plaintiff to a hostile work environment on the basis of his sex and age.

63. In that regard, on August 24, 2020, 10 minutes before the end of Plaintiff's shift, Erin Basham called Plaintiff into a conference room at Amityville. During said meeting, Erin Basham, who is a woman, made numerous discriminatory comments towards Plaintiff targeting his sex and age, including, but not limited to the following:

   a. "Now I understand why there are more women in this field than men!"

   b. "Looks like women do civil service job better, than men!"

   c. "Women understand this field better!"

   d. "Look around!" "Would you say there are more men than women here?" (at the time of this meeting Plaintiff was the only man at Amityville)

64. Plaintiff was appalled by Erin Basham's discriminatory conduct, and opposed the same, indicating that he was able to perform the job regardless of his gender.

65. Erin Basham, who is in her 30s, continued making discriminatory comments towards Plaintiff, saying,

   a. "I can understand...As we get older, we tend to forget things or do things...That will be the case with you!"

66. Plaintiff felt embarrassed, and informed Erin Basham that her comments were very insulting to him. Erin Basham brushed off Plaintiff's objections, concluding the meeting.

9

67. On August 25, 2020, Yolanda Robano-Gross, called Plaintiff to inquire about his recent complaints about discrimination. During said phone call, Plaintiff confirmed that he was indeed discriminated against by his immediate supervisor, and that she knew exactly who that supervisor was. Plaintiff further indicated that he was afraid to name the supervisor because he was afraid of retaliation.

57. Options, through its agents and employees, took no immediate corrective action to address Plaintiff's repeated complaints about discrimination.

58. The working conditions at Options became so difficult and unpleasant for Plaintiff that a reasonable person in his shoes would have felt compelled to resign.

59. Instead of resigning, Plaintiff requested time off from September 8, 2020 to September 15, 2020 to deal with the stress he had been subjected to as the result of Options' unlawful discriminatory practices.

60. On September 16, 2020, in retaliation and further discrimination against Plaintiff, his employment with Options was terminated.

61. Plaintiff's complaints about discrimination, his sex and age were the motivating factors for his termination from Options.

62. As a result of Options' actions, Plaintiff felt extremely humiliated, degraded, victimized and embarrassed.

63. As a result of the Options' discriminatory and intolerable treatment, Plaintiff suffered severe emotional distress.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76. As a result of the acts and conduct complained of herein, Plaintiff was forced to withdraw his retirement plan to catch-up with paying bills due to the discrimination and wrongful termination by Options.

65. Plaintiff's position at Options was intolerable as a result of the discrimination by the Defendant to which Plaintiff was subjected, and no reasonable person in Plaintiff's position could be expected to continue working under those conditions.

66. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

67. As a result of the acts and conduct complained of herein, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

68. Because the Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount, which exceeds the jurisdictional limits of all lower Courts.

**FIRST CLAIM FOR RELIEF**
**Sex-Based Discrimination in Violation of Title VII**

69. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

70. Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer - (1) to discharge any individual, or otherwise discriminate against any individual with

11

respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex.

83. Pursuant to Section 2000e-2(m), an unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.

71. Options, through its agents and employees, unlawfully discriminated against Plaintiff with respect to his terms, conditions, and privileges of his employment because of his sex.

72. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## SECOND CLAIM FOR RELIEF
### Hostile Work Environment in Violation of Title VII

73. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

74. Pursuant to Section 2000e-2(a), it shall be an unlawful employment practice for an employer - (1) to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex.

75. The Supreme Court has held that Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

76. Options, through its agents and employees, unlawfully subjected Plaintiff to hostile work environment.

90. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF
**Retaliation in Violation of Title VII**

77. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

78. Pursuant to Section 2000e-3(a), it shall be an unlawful employment practice for an employer to discriminate against any individual, because he has opposed any practice made an unlawful employment practice under Title VII.

79. Options, through its agents and employees, unlawfully retaliated against Raphael for opposing the Defendant's unlawful employment practices.

80. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### FOURTH CLAIM FOR RELIEF
**Age Discrimination in Violation of ADEA**

81. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

82. Pursuant to 29 USCS § 623 (a) (1), it shall be unlawful for an employer to discharge any individual or otherwise discriminate against any individual with respect to his terms, conditions, or privileges of employment, because of such individual's age.

97. Options, through its agents and employees, unlawfully discriminated against Raphael wth respect to his terms, conditions, or privileges of employment, because of his age.

83. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## FIFTH CLAIM FOR RELIEF
### Retaliation in Violation of ADEA

84. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

100. Pursuant to 29 USCS § 623 (d), it shall be unlawful for an employer to discriminate against any of his employees because such individual opposed any practice made unlawful by this section.

101. Options, through its agents and employees, unlawfully retaliated against Raphael for opposing its unlawful employment practices.

102. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## SIXTH CLAIM FOR RELIEF
### Sex/Age-Based Discrimination in Violation of NYSHRL

103. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

104. Pursuant to § 296 (1) (a) of NYSHRL, it shall be an unlawful discriminatory practice, for an employer, because of an individual's sex, age to discharge from employment such individual

14

or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

105. Options unlawfully discriminated against Plaintiff in compensation, terms, conditions and privileges of his employment because of his sex and age.

106. As a direct and proximate result of Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### SEVENTH CLAIM FOR RELIEF
### Hostile Work Environment in Violation of NYSHRL

107. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

108. Pursuant to § 296 (1) (h) of NYSHRL, it shall be an unlawful discriminatory practice, for an employer to subject any individual to harassment because of an individual's sex, age or because the individual has opposed any practices forbidden by NYSHRL, regardless of whether such harassment would be considered severe or pervasive. Such harassment is an unlawful discriminatory practice when its subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer shall not be determinative of whether such employer will be liable.

109. Options unlawfully subjected Plaintiff to discrimination, which rises above level what a reasonable victim of discrimination with the same protected characteristic would consider petty slights or trivial inconveniences.

110. As a direct and proximate result of the Options' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

### EIGHTH CLAIM FOR RELIEF
### Retaliation in Violation of NYSHRL

111. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

112. Pursuant to § 296 (1) (e) of NYSHRL, it shall be an unlawful discriminatory practice for any employer to discharge or otherwise discriminate against any person because he or she has opposed any practices forbidden by NYSHRL.

113. Pursuant to § 296 (7) of NYSHRL, it shall be an unlawful discriminatory practice for any person engaged in any activity to which NYSHRL applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden by NYSHRL.

114. The Defendants engaged in an unlawful discriminatory practice by retaliating, continuing and escalating the discrimination and hostile work environment to which the Plaintiff was subjected, terminating Plaintiff, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

115. As a direct and proximate result of the Defendants' unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

## INJURY AND DAMAGES

116. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss and/or partial loss of a career and the loss and/or partial loss of a salary, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. Declaring that the Defendant engaged in unlawful employment practice prohibited by federal and state common law, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.,* Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*, New York State Executive Law §296 et. seq.; and that the Defendant harassed, discriminated against, and retaliated against Plaintiff on the basis of his sex/age and awarding Plaintiff a recovery for damages sustained;

B. Awarding damages to the Plaintiff, retroactive to the date any such damages were initially incurred, for all lost wages and benefits resulting from Defendant's unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

C. Awarding Plaintiff compensatory damages for mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

A. Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and retaliatory and unlawful conduct and making the Plaintiff whole for all earnings and other benefits he would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, title, seniority status, wages and other lost benefits;

B. Awarding Plaintiff punitive damages;

C. Awarding Plaintiff attorney's fees, costs and expenses; and

D. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: June 28, 2021
New York, New York

Respectfully submitted,

**AKIN LAW GROUP PLLC**

*/s/ Olena Tatura*

_____
Olena Tatura, Esq.
45 Broadway, Suite 1420
New York, NY 10006
Telephone: (212) 825-1400
Olena@akinlaws.com
*Attorneys for Plaintiff*